# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AIR VENT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 08-cv-00146 |
| | ) | |
| VENT RIGHT CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## CLAIM CONSTRUCTION ORDER

Plaintiff, Air Vent, Inc. ("Air Vent"), is in the business, *inter alia*, of manufacturing and selling building construction products, including roof ridge ventilators ("ridge vents"), certain of which are sold under the name and trademark "Shinglevent® II." Air Vent is the owner by assignment of two patents: (i) United States Patent No. 6,149,517 ("the '517 Patent"), entitled "End-Ventilating Adjustable Pitch Arcuate Roof Ventilator," issued November 21, 2000, and (ii) United States Patent No. 6,793,574 ("the '574 Patent"), entitled "Vent with Presecured Mechanical Fasteners," issued September 21, 2004. The Shinglevent® II product is covered by and marked with the number of the '517 Patent.

Defendant, Vent Right Corporation ("Vent Right"), is also in the business of selling ridge vents for providing roof ventilation. In December 2008, Air Vent filed suit against Vent Right in which it alleges that Vent Right has willfully infringed upon the '517 Patent and the '574 Patent. Air Vent alleges that Vent Right offers for sale and sells ridge vents under the tradename "Breasevent™," which is a "knock-off copy of Plaintiff's patented Shinglevent® II product." Complaint at ¶ 11.

Vent Right denies these allegations and counters that the Breasevent™ product "does not literally or by the doctrine of equivalents infringe any valid claim of the" '517 or '574 patents and that both the '517 and '574 patents are invalid pursuant to 35 U.S.C. §§ 101, 102, 103, and/or 112. Counterclaim, at ¶¶ 40, 41, 49, 50.

The parties have presented two disputed claims for construction. The meaning of these disputed claim terms is a question of law that must be resolved by the Court. *See Markman v. Westview Instruments, Inc*., 52 F.3d 967 (Fed. Cir. 1995). A claim construction hearing / argument was held on April 16, 2009.

## Controlling Law

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp*., 415 F.3d 1303, 1312 (Fed. Cir .2005) (*quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc*., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Generally, claim terms are given the ordinary and customary meaning that would be ascribed to them by a person of ordinary skill in the field of the invention. *Id.* at 1313. The most "significant source of the legally operative meaning of disputed claim language" is the intrinsic evidence of record, that is, the claims, the specification and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996). This is because "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips*, 415 F.3d at 1312. In some cases, the specification may reveal a "special definition" given by the inventor that differs from the meaning the term might otherwise possess. *Id.* at 1316. A specification may also

reveal "an intentional disclaimer, or disavowal, of claim scope by the inventor." *Id.* A person of ordinary skill in the art also looks to the prosecution history of a patent to understand how the patent applicant and the Patent Office understood the claim terms. *Id.* at 1313, 1317.

While claims are to be construed in light of the specification, courts must be careful not to read limitations from the specification into the claim. *Phillips*, 415 F.3d at 1323. Thus, if a patent specification describes only a single embodiment, that does not mean that the claims of the patent necessarily must be construed as limited to that embodiment. *Id.* Rather, the purpose of the specification "is to teach and enable those of skill in the art to make and use the invention" and that sometimes, the best way to do that is to provide an example. *Id.* In *Phillips,* the Federal Circuit acknowledged, "the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification can be a difficult one to apply in practice." *Id.*

Courts may also use extrinsic evidence in construing claim terms if it is necessary, so long as such evidence is not used to "vary or contradict the terms of the claims." *Markman,* 52 F.3d at 980. The Federal Circuit has warned, however, that such evidence is generally "less reliable than the patent and its prosecution history." *Phillips,* 415 F.3d at 1318. Courts may consider expert testimony, the testimony of the inventor, and prior art, whether or not it is referenced in the specification or prosecution history. *Vitronics*, 90 F.3d at 1584. Courts are also free to consult dictionaries and technical treatises so long as they are careful not to elevate them "to such prominence that it focuses the inquiry on the abstract meaning of the words rather than on the meaning of the claim terms within the context of the patent." *Phillips,* 415 F.3d at 1321-1322. As the appellate court explained in *Markman*, "[extrinsic] evidence may be

helpful to explain scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history." 52 F.3d at 980.

**Claims Construction**

The '517 Patent has three (3) claims, one of which is "independent." The other two (2) claims are "dependent," and depend on independent Claim 1. Air Vent alleges that Independent Claim 1 and dependent Claims 2 and 3 have been infringed by Vent Right.

The '574 Patent includes twenty-two (22) claims, one of which is "independent." The other twenty-one (21) claims are "dependent," and depend on independent Claim 1. Air Vent alleges that independent Claim 1 and dependent Claims 2, 3, 13, 18, and 20 have been infringed by Vent Right.

A.  The '517 Patent

The '517 Patent is directed generally to a roof ridge ventilator ("vent") for ventilating a space immediately below a roof. The '517 Patent contains a detailed description of a vent that is arcuately bendable over the roof ridge so that it can accommodate a variety of roofs that vary in pitch. The vent has openings along its sides and gaps between adjacent rows of tabs at its ends to create paths for the passage of air. The claims of the '517 Patent describe in words the physical structure of the vent shown in the drawings and described in the specification.

The issue before the Court is the construction, or meaning, of the terms/phrases "venting a roof for **air passage** between the interior of a roof and the outside ambient" which appears in Claim 1 of the '517 Patent, as well as the subparagraph (i) of Claim 1 (emphasis added).

Vent Right proposes that the claim term /phrase "air passage" should be construed to mean "exhausting heated air from the space below the roof (attic) to the outside ambient." During the Claims Construction hearing, counsel for Vent Right clarified that with respect to the term "attic" he would agree to broaden that to "just under the roof, attic, crawl space, etc." Unofficial Transcript at 25. The Court finds that the term "attic" or "just under the roof, crawl space, etc." is redundant and superfluous. Claim construction is necessary when the terms of the patent require clarification for use in the determination of the infringement. It is not "an obligatory exercise in redundancy." *NTP, Inc. v. Research in Motion,* 418 F.3d 1282, 1311 (Fed. Cir. 2005), *cert. denied*, 546 U.S. 1157 (2006).

Next, Vent Right proposes that the word "heated" should be included in the construction for the sole reason that it was in the Wolfert claim and that the Wolfert patent was incorporated into the '517 patent. Vent Right also suggests that "heated" can be substituted with the term "warmer than outside, ambient or exhausting warmer air." According to Vent Right, there has to be some context understood that the roof is warmer than the outside because that is the whole purpose of venting a roof.

In response, Air Vent strongly disputes that the Wolfert patent and the '517 patent are identical. Furthermore, Air Vent argues that there is no reason to include a reference to "heated air" in the construction, especially in light of the fact that the term "heated air" is not found in the specification that talks about the invention of the '517 patent.

Upon careful and deliberate consideration of the filing of the parties, the arguments of counsel, and intrinsic evidence, the Court finds and rules that Claim 1 of the '517 Patent requires no construction. Vent Right's proposed construction would improperly import into the

claim limitations such as "heated air" or "attic," neither of which are mentioned in the '517 Patent except to the extent that the prior art (the Wolfert Patent) was incorporated by reference. Therefore, the Court rejects Vent Right's request to construct the claim in this manner.

B.  The '574 Patent

The '574 Patent is directed generally to a ridge vent having nails or other mechanical fasteners presecured or retained in its structure so that the vent may be positioned on a roof and attached by an installer without the need for handling individual nails. The '574 Patent has an extensive written description and drawings showing how the nails are retained (pre-secured in the vent prior to being attached to a roof).

The issue before the Court is the construction, or meaning, of the term / phrase "**fasteners** extending into at least **some** of said passageways for retention therein prior to attachment of said vent to said structure" which appears in Claim 1 of the '574 Patent (emphasis added).

Vent Right proposes that the claim term / phrase "fasteners" should be construed to mean "hardware devices such as nails or screws positioned within at least one or more passageways for holding in place prior to securing the vent to the structure." Counsel for Air Vent proposes Claim 1 of the '574 Patent should be construed as follows: "fasteners which are retained within at least one of the passageways." During the Claim Construction hearing,

counsel for Vent Air agreed to this claim construction, although his preference remains that "fasteners" be clarified to "nails and screws."[1]

The Court finds that the construction as proposed by Air Vent is consistent with the understanding of those skilled in the art and as further supported by the intrinsic record of the '574 patent. The Court finds that there is no need to further clarify the term "fasteners" as the disputed term is clear and requires no construction.

## Conclusion

For the reasons stated above, the Court construes the disputed terms as follows:

| CLAIM TERM | COURT'S CONSTRUCTION |
|---|---|
| Patent '517<br>Disputed Term: "A roofing ridge ventilator for venting a roof for air passage between the interior of a roof and the outside ambient through sides of the ventilator and through ends of the ventilator; ...(Claim 1) (i) whereby said first, second and third gaps [provide] . . . for air passage between the interior of a roof and the outside ambient, . . ." (Claim 1(i)) | No construction required. |
| Patent '574<br>Disputed Term: "A vent . . . having a plurality of tubular passageways for receipt of fasteners . . . and fasteners extending into at least some of said passageways for retention therein prior to attachment of said vent to said structure" | "A vent . . . having a plurality of tubular passageways for receipt of fasteners . . . and fasteners which are retained within at least one of the passageways for retention therein prior to attachment of said vent to said structure." |

---

[1] Counsel for Vent Right stated "I believe what [Plaintiff] proposed for the '574 is acceptable to us. I would prefer 'fasteners' be further defined but it's not a deal breaker for me." Unofficial Transcript at 25. However, counsel for Air Vent replied that he objected to "nails and screws" because bolts, hooks, and any number of other things, may be used to secure the vent to a structure.

So **ORDERED** this 15th day of May, 2009.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Dariush Keyhani, Esquire
Lippes Mathias Wexler Friedman LLP
Email: dkeyhani@meredithkeyhani.com

Sidney R. Bresnick, Esquire
Meredith & Keyhani, PLLC
Email: sbresnick@meredithkeyhani.com

Katherine E. Koop, Esquire
Tucker Arensberg
Email: KKoop@tuckerlaw.com

Mark A. Grace, Esquire
Cohen & Grace, LLC
Email: mgrace@cohengrace.com

Thomas C. Wettach, Esquire
Cohen & Grigsby
Email: twettach@cohenlaw.com