**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

AIR VENT, INC.,                                    )
                                                   )
                          Plaintiff,               )
                                                   )
                v.                                 )        02: 08-cv-00146
                                                   )
VENT RIGHT CORPORATION,                            )
                                                   )
                          Defendant.               )

**MEMORANDUM OPINION AND ORDER**

July 20, 2010

Presently pending before the Court for disposition are the following motions:

(1)     MOTION FOR PARTIAL SUMMARY OF INFRINGEMENT, with brief in

support, filed by Plaintiff, Air Vent, Inc. (*Document Nos. 56 and 57*), the BRIEF IN

OPPOSITION filed by Defendant, Vent Right Corporation (*Document No. 73*), and the REPLY

BRIEF filed by Plaintiff, Air Vent, Inc. (*Document No. 81*); and

(2)     MOTION FOR SUMMARY JUDGMENT ON INVALIDITY OF THE

PATENTS-IN-SUIT filed by Defendant Vent Right Corporation, with brief in support

(*Document Nos. 58 and 60*), the BRIEF IN OPPOSITION filed by Plaintiff, Air Vent, Inc.

(*Document No. 70*), the SUPPLEMENT - TABLE OF CITATIONS filed by Plaintiff, Air Vent,

Inc. (*Document No. 77*), and the REPLY BRIEF filed by Defendant Vent Right Corporation

(*Document No. 82*).

The issues have been fully briefed and the factual record has also been thoroughly

developed via PLAINTIFF'S APPENDIX IN SUPPORT OF ITS MOTION FOR PARTIAL

SUMMARY (*Document No. 56*), PLAINTIFF'S CONCISE STATEMENT OF MATERIAL

FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
(*Document No. 62*), THE DECLARATION OF JORGE HERNANDEZ (*Sealed Document No. 78*), DEFENDANT'S RESPONSIVE CONCISE STATEMENT OF MATERIAL FACTS
(*Document No. 74*), DEFENDANT'S APPENDIX IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT (*Document No. 60*),  DEFENDANT'S CONCISE STATEMENT
OF MATERIAL FACT IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON
INVALIDITY (*Document No. 59*), and PLAINTIFF'S COUNTER-STATEMENT OF
MATERIAL FACTS  with appendix (*Document Nos. 71 and 76*).

After a careful consideration of the motions, the filings in support and opposition
thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the
Plaintiff's motion for partial summary judgment on infringement will be granted.  However, the
Court finds that there are genuine issues of material fact which remain surrounding the issue of
whether the Patents in suit are invalid.  Accordingly, Defendant's motion for summary on
invalidity of the patents-in-suit judgment will be denied.

## BACKGROUND

### A.      The Parties

Plaintiff, Air Vent, Inc. ("Air Vent"), is a Delaware corporation with its principal
place of business in Dallas, Texas.  Air Vent is in the business, *inter alia*, of manufacturing and
selling building construction products, including roof ridge ventilators ("ridge vents"), certain
of which are sold under the name and trademark "Shinglevent® II."  Air Vent is the owner by
assignment of two patents: (i) United States Patent No. 6,149,517 ("the '517 Patent"), entitled
"End-Ventilating Adjustable Pitch Arcuate Roof Ventilator," issued November 21, 2000, and

(ii) United States Patent No. 6,793,574 ("the '574 Patent"), entitled "Vent with Presecured Mechanical Fasteners," issued September 21, 2004 (collectively "the Patents-in-Suit"). The Shinglevent® II product is covered by and marked with the number of the '517 Patent.

Defendant, Vent Right Corporation ("Vent Right"), is an Ohio corporation with its principal place of business in Wickliffe, Ohio. Vent Right offers for sale and sells a roof ridge ventilation product under the mark "Breasevent™." Air Vent alleges that the Breasevent product infringes claims 1-3 of the '517 Patent and claims 1-3, 13, 18, and 20 of the '574 Patent. Vent Right "admits that assuming the '574 Patent is valid, which is specifically denied" the Breasevent product literally infringes claims 1-3, 13, 18, and 20 of the '574 Patent.

The accused Breasevent product is made in China and imported into the United States by Shandex, Industrial, Inc. ("Shandex"), a New Jersey corporation, which is an importer, distributor and seller of building construction products. After the filing of the instant lawsuit, Air Vent filed a patent infringement action against Shandex in the United States District Court for the District of New Jersey (the "New Jersey litigation."). The parties in the New Jersey litigation agreed upon a compromise and settlement of the litigation and a Consent Judgment was entered by the court, which incorporated by reference the settlement agreement between Air Vent and Shandex. The Settlement Agreement provides that "Shandex agrees that the '517 Patent and the '574 Patent (collectively "Plaintiff's Patents) are valid and the claims of the Plaintiff's Patents cover Shandex's accused ridge vent product . . . ."

B.        **The Patents-in-Suit**

The '517 patent was issued on November 21, 2000 from U.S. Patent Application

No. 09/447,666. Jeffery E. Hansen is the named inventor. The '517 patent has three (3) claims,

one of which is "independent," and the other two (2) claims are "dependent" and depend on

independent Claim 1. Air Vent asserts that all three claims are infringed by the Vent Right

product. These claims read as follows:

> 1. A roofing ridge ventilator for venting a roof for air passage between the interior of a roof and the outside ambient through sides of the ventilator and through ends of the ventilator; the ventilator being adapted to be installed longitudinally overlying an open ridge of a roof; the ventilator being sufficiently flexible to be arcuately bent to accommodate a variety of different roof pitches; the ventilator comprising:

>> (a) an elongate top wall having a predetermined length and width and top and bottom surfaces;

>> (b) a pair of outer side walls, each one integrally formed along the longitudinal length of and depending from a respective bottom surface of said top wall and at a predetermined angle with respect to said top wall, with each of said side walls including a plurality of apertures extending therethrough for air passage therethrough;

>> (c) a pair of upturned edge members, each one integrally formed with and extending from a respective distal end of said outer side wall opposite said top wall and extending along the longitudinal length of, and at a predetermined angle with respect to, a said side wall, said upturned edge members extending toward said top wall a predetermined distance to effectively shield at least a portion of said apertures;

>> (d) a plurality of brace members positioned at predetermined intervals along the length of said bottom surface of said top wall, for engagement with a roof surface;

>> (e) a pair of transverse end walls, one each integrally formed along opposite ends of the ventilator, with each end wall being discontinuous at a center section thereof and comprised in said

4

center section of a plurality of tabs depending from the bottom surface of the top wall and disposed in a first transverse row, with said tabs in said first transverse row at each end wall being transversely spaced apart from each other to define first gaps for air passage therebetween when the ventilator is installed on a roof;

(f) with tabs in said first row being generally V-shaped, with the apex of the V-shape facing outwardly of the ventilator in the longitudinal direction;

(g) a second transverse row of tabs at each end of the ventilator, depending from and integrally formed with the bottom surface of the top wall and longitudinally spaced apart from the paths in said first row to define second gaps for air passage between said first and second rows of tabs when the ventilator is installed on a roof, with said tabs in said second transverse row being spaced apart from each other to define third gaps for air passage therebetween when the ventilator is installed on a roof;

(h) with tabs in said second row being generally V-shaped, with the apex of the V-shape facing inwardly of the ventilator in the longitudinal direction;

(i) whereby said first, second and third gaps cooperatively comprise means providing circuitous paths for air passage between the interior of a roof and the outside ambient, across ventilator end walls, when the ventilator is installed on a roof; and

(j) whereby said first and third gaps permit arcuate bending of the ventilator without providing end wall resistance to arcuate bending resulting from end wall continuity.

2. The ventilator of claim 1, wherein the apex of each of the tabs in each said second row is longitudinally aligned with a said first gap in said first row.

3. The ventilator of claim 1, wherein a sheet of filter material is carried by the ventilator, underlying said rows of tabs, underlying portions of said brace members and underlying a center section of the ventilator and extending longitudinally of said ventilator.

*See* '517 Patent. The claims of the '517 patent were construed by the Court in its Claim

Construction Order of May 15, 2009. As reflected in that Order, the Court found that Claim 1

of the '517 Patent required no construction.  Accordingly, the claim terms of the '517 Patent

will be given their ordinary and customary meaning in the art at the time of the invention.

The '574 patent was issued on September 21, 2004 from U.S. Patent Application

No. 10/600,397.  Larry Dwight Robinson is the named inventor.

The '574 Patent includes twenty-two (22) claims, one of which is "independent."

The other twenty-one (21) claims are "dependent" and depend on independent Claim 1.  Air

Vent alleges that independent claim 1 and dependent claims 2, 3, 13, 18 and 20 are infringed by

Vent Right's product.  Those claims read as follows:

> 1.  A vent which is attachable, but not attached to a structure comprising
> a body having openings for passage of air therethrough while
> resisting undesired entry of foreign matter, said body having a
> plurality of tubular passageways for receipt of fasteners,
> said passageways having an entry end and an exit end, and
> fasteners extending into at least some of said passageways for
> retention therein prior to attachment of said vent to said structure.
>
> 2.  The vent of Claim 1 including said fasteners being nails,
>
> 3.  The vent of Claim 2 including said nails having a length greater than
> the length of said passsageway into which it extends.
>
> 13.  The vent of Claim 3 including said vent being a panel for an elongated
> roof ridge ventilator.
>
> 18.  The vent of Claim 3 including said nails having a total length substantially
> greater than the axial length of said body passageway.
>
> 20.  The vent of Claim 1 including said fasteners being in interference fit within said
> passageways so as to resist undesired separation of the fastener from the passageway.

See '574 Patent.  The claim terms of the '574 Patent will be given their ordinary and customary

meaning, except as to the portion thereof that was construed by the Court, which will be given

the Court's construction as follows:

| CLAIM TERM | COURT'S CONSTRUCTION |
|---|---|
| **Patent '574 - Claim 1**<br><br>Disputed Term: "A vent . . . having a plurality of tubular passageways for receipt of fasteners . . . and fasteners extending into at least some of said passageways for retention therein prior to attachment of said vent to said structure." | "A vent . . . having a plurality of tubular passageways for receipt of fasteners . . . and fasteners which are retained within at least one of the passageways for retention therein prior to attachment of said vent to said structure." |

*See* Claims Construction Order, May 15, 2009 (Document No. 40).

## C.        Procedural History

On January 31, 2008, Air Vent filed a patent infringement action in this Court[1] against Vent Right in which it asserted that the Breasevent product had infringed four (4) patents owned by Air Vent, *to wit*:  three (3) patents for a roof ridge ventilator, the '517 Patent, the '528 Patent, and the'084 Patent (collectively referred to as the '517 Patent Family);[2] and one patent for a ventilator with a presecured fastener, the '574 Patent.  Air Vent alleges that Vent Right's Breasevent product is a "knock-off copy of Plaintiff's patented Shinglevent® II product."

On December 31, 2008, Air Vent filed an Amended Complaint in which it accused the Breasevent product of infringing <u>only</u> the '517 Patent and the '574 Patent and also added common law claims for unfair competition and unjust enrichment.  Both non-asserted patents

[1]        Venue is proper in this District pursuant to 28 U.S.C. § 1400(b).  Vent Right has acquiesced to venue in this District and waived any rights it may have had to contest the same.  *See* Amended Complaint, ¶ 7; Fed. R. Civ. P. 12(b)(3).

[2]        The '528 Patent and the '084 Patent are continuations of the application on which the '517 Patent issued and have the same disclosures as the '517 Patent.

(the '528 Patent, and the '084 Patent) are continuations of the application on which the '517 Patent issued and have the same disclosures as the '517 Patent.

In its answer to the Amended Complaint, Vent Right asserts various affirmative defenses and counterclaims including, *inter alia*, the noninfringement and invalidity of the '517 Patent Family and the '528 Patent.[3]

The parties have filed cross motions for summary judgment. Air Vent moves for summary judgment of infringement of the '517 patent and infringement of the '574 patent.[4] Vent Right moves for summary judgment on the grounds that the '517 Patent Family and the '574 patent are invalid as anticipated or obvious.

## STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes

---

[3]     In its brief in support of motion for summary judgment of invalidity, Vent Right states that because "Air Vent was unwilling to dismiss with prejudice the counts for infringement of the '528 Patent and the '084 Patent, [its] Counterclaim seeks, *inter alia* a declaratory judgment of non-infringement and/or invalidity of all four Patents-in-Suit." See Br. at 1, n.1 (Document No. 60).

[4]     Air Vent has not moved for summary judgment on its claims of unfair competition and unjust enrichment.

are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita*, 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Any appeal in this action, which arises under the patent laws of the United States, must be to the United States Court of Appeals for the Federal Circuit, 28 U.S.C. § 1295(a), whose precedent governs matters of substantive patent law in this Court. The Federal Circuit has adopted decisions of the Court of Customs and Patent Appeals ("C.C.P.A.") as its own precedent, making those decisions binding on this Court. *E.g., Southwire Co. v. Essex Group, Inc.*, 220 U.S.P.Q. 1053, 1056 n.6 (N.D. Ill. 1983) ("The law that controls this action . . . is the law of the Federal Circuit [, which] has declared that the patent decisions of [the C.C.P.A.] will

be considered binding . . . . ") (*citing South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982) (en banc)).

## DISCUSSION

A.     <u>Air Vent's Motion for Summary Judgment on Infringement</u>

A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States . . . during the term of the patent." 35 U.S.C. § 271(a).  A court should employ a two-step analysis in making an infringement determination. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).  First, the court must construe the asserted claims to ascertain their meaning and scope.  *Id.*  Construction of the claims is a question of law subject to de novo review. *See Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998). The trier of fact must then compare the properly construed claims with the accused infringing product.  *Markman,* 52 F.3d at 976.  This second step is a question of fact. *See Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353 (Fed. Cir. 1998).  "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000).

"Direct infringement requires a party to perform each and every step or element of a claimed method or product." *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007). "If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d  at 1247. If an accused product does not infringe an independent claim, it also does not infringe any claim depending thereon.  *See Wahpeton Canvas Co. v. Frontier, Inc.,* 870 F.2d 1546, 1553 (Fed. Cir.1989).  The patent owner has the burden of proving infringement and must meet its burden

by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988) (citations omitted).

### 1. The '517 patent

Air Vent has asserted that the accused Vent Right product literally infringes claims 1, 2, and 3 of the '517 patent. Distilled to its essence, Air Vent accuses the Breasevent ridge vent product of being a "knockoff copy of Air Vent's SVII product, which the '517 Patent was intended to cover." Br. at 1 (Document No. 57).

Vent Right responds that the accused product does not contain each and every element of the claimed invention in the '517 Patent. In support, Vent Right argues that the Breasevent ridge vent product has four significant differences from the claims of the '517 Patent. The Court finds these arguments to be without merit for the following reasons.

First, Vent Right appears to argue that Claim 1 of the '517 Patent requires that <u>all</u> of the end tabs must be V-shaped, but the Breasevent product "uses a first row of tabs where the end most tabs on the first row are <u>not</u> 'V-shaped'." The Court finds this argument to be without merit because Claim 1 of the '517 patent does not require that all of the end tabs must be V-shaped, rather Claim 1 states, in pertinent part, as follows: "(f) <u>with tabs</u> in said first row being <u>generally</u> V-shaped, with the apex of the V-shape facing outwardly of the ventilator in the longitudinal direction." '517 Patent, Claim 1(f) (emphasis added). Nowhere in the claim does it state that all tabs in the first row must be V-shaped.

Next, Vent Right argues that the '517 Patent claims must be read as if the claimed product vents a roof <u>solely</u> through its ends. According to Vent Right, the Breasevent product does not vent a roof through the ends, rather venting with the Breasevent product occurs

through the sides of the ventilator. Vent Right's Br. at 7. Moreover, Vent Right argues that

while "the very small gaps between the tabs in the ends plugs will obviously result in minor

leakage of air . . . that small air flow does not amount to 'venting a roof' as required by the

claims of the '517 Patent."

The Court finds this argument to be without merit as the claims of the '517 Patent

do not require that all ventilation or even the bulk of the ventilation take place through the ends

of the vent as Vent Right contends. Rather, the '517 Patent states that the sides of the patented

ventilator "are provided with a plurality of slotted openings in sidewalls" (col. 3, lines 32-34);

and "air is drawn from the attic to the outside ambient . . . through openings in the end wall of

the ventilator, as well as through slotted openings in said walls." (col. 3, lines 27-30). The

claims of the '517 patent do not provide that the roof will be vented solely through its ends.

Third, Vent Right argues that its product has four additional nail holes as compared

with the Shinglevent II product. However, there is no mention at all of nail holes in the claims

of the '517 patent. Accordingly, the Court finds that this argument is without merit as the

difference in the number of nail holes is not relevant to the infringement inquiry.

Finally, Vent Right argues that the side vents on the Breasevent product "are rounded

or softened whereas the Shinglevent II ridge vent has squared edges." Vent Right Opp. at 9.

However, the claims of the '517 patent do not describe the side vents as either squared or

rounded. Rather, Claim 1 reads in pertinent part as follows: "(b) a pair of outer side walls . . .

with each of said side walls including a plurality of apertures extending therethrough for air

passage therethrough." Accordingly, the Court finds that this argument is without merit

12

because the issue of whether the side vents are rounded or squared is not relevant to the infringement inquiry.

For these reasons, the Court finds and rules that the Breasevent roof ridge product literally infringes Claims 1, 2, and 3 of the '517 Patent.

**2.      The '574 patent**

Air Vent has also asserted that the accused Vent Right product literally infringes claims 1-3, 13, 18 and 20 of the '574 patent.  Vent Right essentially concedes infringement of the '574 Patent, but argues that the '574 Patent is invalid because, among other reasons, prior art references clearly anticipate and/or render obvious the claims of the '574 Patent as construed by this Court.

Because Vent Right has conceded that its product literally infringes claims 1-3, 13, 18 and 20 of the '574 patent, the Court finds and rules that the Breasevent roof ridge product literally infringes claims 1-3, 13, 18 and 20 of the '574 patent.  Vent Right's invalidity arguments are discussed *infra*.

**3.      Conclusion**

For the aforementioned reasons, the Court finds and rules that the Vent Right product literally infringes claims 1, 2, and 3 of the '517 patent and claims 1-3, 13, 18 and 20 of the '574 patent.  Accordingly, Plaintiff's Motion for Partial Summary Judgment of Infringement will be granted.

**B.**     **<u>Vent Right's Motion for Summary Judgment of Invalidity of the Patents-In-Suit</u>**[5]

Issued patents are presumed valid, and the "underlying determination of invalidity . . . must be predicated on facts established by clear and convincing evidence." *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed. Cir.1998) (citations omitted). The Federal Circuit has stated that "[t]his burden is especially difficult when the [asserted] prior art was before the PTO examiner during prosecution of the application." *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed. Cir.1990) (citation omitted). "The presumption of validity under 35 U.S.C. § 282 carries with it a presumption that the examiner did his duty and knew what claims he was allowing." *Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1054 (Fed. Cir.1989) (citation omitted); *Am. Hoist & Derrick Co. v. Sowa and Sons, Inc.*, 725 F.2d 1350, 1358 (Fed. Cir.), *cert. denied*, 469 U.S. 821 (1984). The Federal Circuit has explained that,

> [w]hen no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the

---

[5]     Vent Right does not cite any expert testimony in support of its anticipatory or obviousness position. Air Vent relies upon the expert opinion of David Roodvoets for its position that neither the '517 nor '574 patents are anticipated or obvious over the prior art cited by Vent Right. The Federal Circuit has stated that, "while an analysis of obviousness always depends on evidence that supports the required *Graham* [*v. John Deere Co. of Kansas City*, 383 U.S. 1, (1966)] factual findings, it also may include recourse to logic, judgment and common sense available to the person of ordinary skill that do not necessarily require explication in any reference or expert opinion." *Perfect Web Technologies, Inc. v. InfoUSA, Inc.,* 587 F.3d 1324, 1329 (Fed. Cir. 2009). There is no cross-motion for summary judgment on nonobviousness, and the Court has not been asked to assess whether the technology and disclosures at issue in this action require elucidation by an expert.

references and to be familiar with their work with the level of skill in the art and whose duty it is to issue only valid patents.

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008) (quoting *Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1359 (Fed. Cir. 1984)).

### 1. Anticipation

An anticipation inquiry involves two steps. First, the court must construe the claims of the patent in suit as a matter of law. *See Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 714 (Fed. Cir. 1998). Second, the finder of fact must compare the construed claims against the prior art. *See id.* "Although anticipation is a question of fact, it still may be decided on summary judgment if the record reveals no genuine dispute of material fact." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001).

Proving a patent invalid by anticipation "requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation." *Advanced Display Sys. Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (citations omitted). The Federal Circuit has stated that "[t]here must be no difference between the claimed invention and the referenced disclosure, as viewed by a person of ordinary skill in the field of the invention." *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991). The elements of the prior art must be arranged or combined in the same manner as in the claim at issue, but the reference need not satisfy an "ipsissimis verbis" test, *i.e.*, identity of terminology is not required. *In re Gleave*, 560 F.3d 1331, 1334 (Fed. Cir. 2009) (citations omitted). "In determining whether a patented invention is [explicitly] anticipated, the claims are read in the context of the patent specification in which

they arise and in which the invention is described." *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d 1550, 1554 (Fed. Cir. 1995). The prosecution history and the prior art may be consulted "[i]f needed to impart clarity or avoid ambiguity" in ascertaining whether the invention is novel or was previously known in the art. *Id.* (internal citations omitted).

"A claimed invention cannot be anticipated by a prior art reference if the allegedly anticipatory disclosures cited as prior art are not enabled." *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354 (Fed. Cir. 2003). Additionally, the reference must "enable one of ordinary skill in the art to make the invention without undue experimentation." *In re Gleave*, 560 F.3d at 1334 (citing *Impax Labs., Inc. v. Aventis Pharms. Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008)). "As long as the reference discloses all of the claim limitations and enables the 'subject matter that falls within the scope of the claims at issue,' the reference anticipates-no 'actual creation or reduction to practice' is required." *In re Gleave*, 560 F.3d at 1334 (quoting *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1380-81 (Fed. Cir. 2003) and *In re Donohue*, 766 F.2d 531, 533 (Fed. Cir. 1985)).

## 2. Obviousness

"A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). Obviousness is a question of law, which depends on several underlying factual inquiries.

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)). "Because patents are presumed to be valid, *see* 35 U.S.C. § 282, an alleged infringer seeking to invalidate a patent on obviousness grounds must establish its obviousness by facts supported by clear and convincing evidence." *Kao Corp. v. Unilever U.S. Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006) (citation omitted)

In addition to showing that a person of ordinary skill in the art would have had reason to attempt to make the composition or device, or carry out the claimed process, a defendant must also demonstrate, by clear and convincing evidence, that "such a person would have had a reasonable expectation of success in doing so." *PharmaStem Therapeutics, Inc. v. ViaCell, Inc.*, 491 F.3d 1342, 1360 (Fed. Cir. 2007).


3.      **The '517 patent** - Vent Right argues that the claims of the '517 Patent Family are invalid as anticipated under 35 U.S.C. § 102 by either the Wolfert ' 095 Patent, the Smith '502 Patent, the Waltz '920 Patent or the MacLeod '149 Patent and/or are obvious under 35 U.S.C. § 103, as the invention claimed would have been obvious to one of ordinary skill in the art when the patent application was filed.[6]

_____

[6]      In this case, according to Vent Right, it "has taken the inventor of the '517 Patent,

(continued...)

*a.  Anticipation - The asserted prior art references*

Vent Right argues that the concept of the '517 patent - the concept of having built- in

end plugs on a ridge ventilator - was well known before the filing date of the '517 Patent.

Specifically, Vent Right argues that the Wolfert '095 Patent, the Smith '502 patent, the Waltz

'920 Patent or the MacLeod '149 patent disclose each and every limitation of claim 1 of the

'517 Patent either expressly or inherently and thus, claim 1 is invalid as being anticipated under

35 U.S.C. § 102.[7]

(1) U.S. Patent 5,122,095 to Wolfert ("Wolfert '095 Patent"), entitled Adjustable

Filtered Roof Ridge Ventilator, was filed on March 4, 1991, and issued on June 16, 1992.

According to Vent Right, the Wolfert '095 Patent, which is the predecessor to the '517 Patent,

discloses, yet does not claim, multiple integral ends tabs with gaps between the tabs.

Additionally, according to Vent Right, there is no significance to the shape of the end tabs of

the '517 Patent, because in the first continuation of the application, the inventor removed the

_____

[6](...continued)
Jeffrey Hansen, as a person of ordinary skill in the art."  Accordingly, "Vent Right's
arguments are based upon the testimony of the inventor as the person of ordinary
skill in the art."  Reply at 5.  (Document No. 82).

David Roodvoets, Air Vent's expert, defines "a person of ordinary skill in the field
of roofing products design" as a person with a "B.S. degree in mechanical or civil
engineering and two to three years experience in the building construction industry.
Such persons would be expected to focus primarily on the specific requirements of
the buildings to be ventilated and products that would provide effective
ventilation."  Affidavit of Roodvoets, at ¶ 6.

[7]    The Wolfert '095 Patent, the Smith '502 Patent, and MacLeod '149 Patent were
each before the examiner during prosecution of the '517 patent.  Air Vent does not
dispute that the Waltz '920 Patent was not considered by the patent examiner
during prosecution of the application issuing as the '517 Patent.

requirement that the end tabs be V-Shaped. However, David Roodvoets ("Roodvoets"),[8] Air Vent's expert, states that the Wolfert ' 095 Patent is "prior art of a type that is entirely different from the Hansen '517 Patent." According to Roodvoets, the Wolfert '095 Patent "has an end plug that comprises flat tabs that are intended to close off all air and water. They may leak in instances, but that is not its intent, nor would such a product be sold with the intent that air or water could pass through the end plugs."

Further, Roodvoets contradicts Vent Right's argument that there is no significance to the shape of the end tabs of the Hansen '517 patent. According to Roodvoets, the V-shaped tabs of the '517 patent provide structural support to a much greater degree than the flat tabs of the Wolfert '095 Patent.

(2) U.S. Patent No. 5,772,502 to Smith ("Smith '502 Patent"), entitled "Adjustable Pitch Roof Vent with Accordian-Shaped End Plug," was filed on July 23, 1997 and issued on June 30, 1998. The Smith '502 Patent provides an adjustable-pitch ridge vent having continuous accordian-shaped pleated end plugs for covering an opening at the peak of a roof.

According to Roodvoets, "the roofing industry learned that [the Wolfert '095] product leaked and the Smith '502 construction was developed to correct the problem, which the Smith '502 did to a large degree. But neither the Wolfert '095 nor the Smith '502 was intended to allow the passage of air through the end plugs as in the case of the Hansen '517 patent, and both teach away from the invention of the '517 Patent."

---

[8]     David Roodvoets is an expert in the field of roofing products. He has over thirty (30) years of experience in designing and developing roofing products and working with many engineers in the roofing industry.

Further, Roodvoets explains that the Smith '502 and the Hansen '517 are "entirely different structural designs, *i.e.*, the "Smith '502 is directed to a type of prior art construction that the design of the Hansen '517 Patent was intended to improve. Smith '502 has an accordian-shaped pleated end plug that is solid and intended to close off all water and air; the invention of the '517 Patent has an entirely different end plug construction; one that is intended to and does keep out water and insects, but which lets air pass through, providing ventilation through the ends of the vent.

(3) U.S. Patent No. 5,457,920 to Waltz ("Waltz '920 Patent), entitled "Ridge Top Vent For Roofs," was filed on December 13, 1993 and issued on October 17, 1995. The Waltz '920 Patent discloses end tabs that have a straight tab that interlocks or slides into a squared U-shaped tab and claims multiple rows of end tabs with gaps between the tabs. The abstract of the Waltz '920 Patent indicates that the product has "grille portions flexibly located longitudinally along its lateral edges." *See* 'Waltz '920 Patent, Abstract.

According to Roodvoets, "the problem with the Waltz '920 construction in the opinion of the industry was that it didn't work very well. There were problems with the slidability of the flexible elements of the vent, which left openings through which foreign matter could enter. If Waltz were to work as it was intended, it would block off all air from passage through the ends. This problem was attempted to be solved, first by the Smith ' 502, and later by the Hansen ' 517 patent. But Smith '502 had pleats which sealed off air passage." *See* Roodvoets Decl., ¶ 9.

(4) U.S. Patent No. 5,009,149 to MacLeod ("MacLeod '149 Patent), entitled Roof Vent, was filed on December 18, 1989 and issued on April 23, 1991. The MacLeod ' 149

Patent uses straight end tabs that overlap when bent. The ends of the extending tabs close when the vent is attached to a roof. It has transversely spaced rows of integral vanes along its lateral edges. According to Roodvoets, "[t]he end plug of this vent is not intended to allow air to pass through the ends as in Hansen '517, nor do the end tabs provide the structural support as in the V-shaped tabs of the '517 Patent. *See* Roodvoets Decl., ¶ 11.

b. *Obviousness*

Vent Right argues that the asserted claims of the '517 Patent Family are invalid as obvious "to one of ordinary skill in the art when the patent was filed" because "the inventor of the '517 Patent merely suggested the substitution of various known components to arrive at the supposed invention. There is no evidence that the claimed components comprising the claimed invention - the V-shaped end tabs - operate in a manner different than those known components in the prior art, or produce non-predictable results. There was no invention. The simple combination claimed by the '517 Patent was 'the product not of innovation, but of ordinary skill and common sense'." Br. at 15 (*quoting KSR*, 550 U.S. at 421).

However, according to Roodvoets, after studying the Hansen '517 Patent and the Robinson '574 Patent, and the prior art cited by Vent Right, "prior art would not make the inventions disclosed therein obvious to a person of ordinary skill, . . . , in the roofing field. The prior art shows a steady, but incremental advance in this field, and the Hansen and Robinson inventions were part of that advance." Roodvoets opines that the "Hansen '517 and Robinson '574 Patents are unobvious and undisclosed in the prior art cited by Vent Right." *See* Roodvoets Decl., Conclusion, at 8-9.

*c.*      *Conclusion as to the '517 patent*

For the foregoing reasons, the Court finds that Vent Right has not demonstrated the lack of a genuine issue of material fact with respect to anticipation by the Wolfert ' 095 Patent, the Smith '502 Patent, the Waltz '920 Patent or the MacLeod '149 Patent. The Court further finds that Vent Right has also not demonstrated the lack of a genuine issue of material fact with respect to obviousness, especially in light of Roodvoets' opinion that the Hansen '517 and Robinson '574 Patents are unobvious and undisclosed in the prior art cited by Vent Right. *See* Roodvoets Decl., p. 8, Conclusion.

Accordingly, the motion for summary judgment as to the invalidity of the '517 patent will be denied.

**4.      The '574 patent** - Vent Right argues that the claims of the '574 Patent are invalid as anticipated under 35 U.S.C. § 102 by either the Smith '502 Patent or the Headrick '963 Patent[9] and/or invalid as obvious under 35 U.S.C. § 103 as the invention claimed would have been obvious to one of ordinary skill in the art when the patent application was filed.[10]

---

[9]      While the Headrick '963 patent was not cited in the file of the '574 patent, the Court notes that  Headrick U.S. patent 6,371,847, which is a continuation of the application that resulted in the issuance of the Headrick '963 patent, was cited in the file of the '574 patent and has the same disclosure as the Headrick '963 patent. Therefore, it appears that the patent examiner had before him the exact same disclosure as if he had had the Headrick '963 patent.

[10]      Interestingly, the Court notes that Vent Right applied for its own patent on a roof vent with presecured fasteners <u>after</u> the '574 patent was filed.   U.S. patent application No. 11/842,361, was filed by Mario Kaseda, Vent Right's sole principal, on August 21, 2007, and was published on February 26, 2009, as Pub. No. US 2009/0049769 A 1.  *See* Air Vent's Appendix, Exhibit K (Doc. No. 76).

22

The Smith '502 patent was cited by the patent examiner during the prosecution of the '574 patent and was cited in the specification of the '574 patent application. Vent Right argues that each of the limitations of claim 1 of the '574 Patent reads on an embodiment disclosed in the Smith '502 patent. Not surprisingly, Air Vent, again relying upon the affidavit of Roodvoets, disputes this argument.

According to Roodvoets, there is no disclosure in Smith '502 of presecuring nails in the vent. Rather, Smith '502 "is merely illustrative of the prior art method of inserting nails in the vent holes while on the roof, the very problem that Robinson '574 was invented to solve." Roodvoets Decl., at ¶ 14.

As to the Headrick ' 963 Patent, Vent Right argues that, like the Smith '502, "each of the limitations of claim 1 of the '574 Patent reads on an embodiment disclosed in the Headrick '963 Patent." Br. at 13. Again, relying upon Roodvoets, Air Vent responds that the Headrick ' 963 Patent is quite different from the Robinson '574 Patent because it does not disclose presecured nails in the nail holes of the vent. Rather, the Headrick '963 shows nails carried in buttresses along the sides of the vent, which then must be removed from the buttresses and inserted into the nail holes before being hammered into the roof deck. The nails of the Robinson '574 Patent are presecured in the nail holes and need only be hammered into the roof deck after the vent is placed over the roof ridge.

According to Roodvoets, "[t]he Headrick '963 patent actually teaches away from the Robinson '574 patent because it only discloses means by which the nails must be carried onto the roof with the vent, then removed from the vent, and then inserted into nail holes." Roodvoets Decl., at ¶ 15.

*c.*     *Conclusion as to the '574 Patent*

Again, the Court finds that Vent Right has not demonstrated the lack of a genuine issue of material fact with respect to anticipation by the Smith '502 patent and/or the Headrick '963 Patent  The Court further finds that Vent Right has also not demonstrated the lack of a genuine issue of material fact with respect to obviousness.  Accordingly, the motion for summary judgment as to the invalidity of the '574 patent will be denied.  There is no cross motion by Air Vent regarding the validity of the '574 patent.

## Conclusion

For all the foregoing reasons, the Motion for Partial Summary Judgment filed by Air Vent, Inc., will be granted and the Motion for Summary Judgment filed by Vent Right Corporation will be denied.  With Air Vent's claims for unfair competition and unjust enrichment remaining and the existence of genuine issues of material fact regarding the validity of the Patents-In-Suit, a trial must ensue.

An appropriate Order follows.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

AIR VENT, INC.,                          )
                                         )
                    Plaintiff,           )
                                         )
          v.                             )          02: 08-cv-00146
                                         )
VENT RIGHT CORPORATION,                  )
                                         )
                    Defendant.           )

**ORDER OF COURT**

**AND NOW**, this 20th day of July, 2010, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

　　　　1.　　　The Motion for Partial Summary Judgment of Infringement filed by Air Vent,

Inc. is **GRANTED**; and

　　　　2.　　　The Motion for Summary Judgment on Invalidity of the Patents-In-Suit filed

by Vent Right Corporation is **DENIED**.

　　　　It is further **ORDERED** that Air Vent, Inc., shall file a Pretrial Statement on or

before **August 9, 2010** and Vent Right Corporation shall file a Pretrial Statement on or before

**August 30, 2010.**

　　　　It is further **ORDERED** that a pretrial conference in this matter is scheduled on

**Friday, September 3, 2010 at 2:15 P.M.**


                                         BY THE COURT:

                                         s/Terrence F. McVerry
                                         United States District Court Judge

cc:     Dariush Keyhani, Esquire
        Lippes Mathias Wexler Friedman LLP
        Email: dkeyhani@meredithkeyhani.com

        Sidney R. Bresnick, Esquire
        Meredith & Keyhani, PLLC
        Email: sbresnick@meredithkeyhani.com

        Katherine E. Koop, Esquire
        Tucker Arensberg
        Email: KKoop@tuckerlaw.com

        Mark A. Grace, Esquire
        Cohen & Grace, LLC
        Email: mgrace@cohengrace.com

        Thomas C. Wettach, Esquire
        Cohen & Grigsby
        Email: twettach@cohenlaw.com